**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| MARITECH MARINE SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BAY WELDING SERVICES, INC., <br><br> Defendant. | Case No. 3:20-cv-00231-SLG |

## <u>ORDER RE MOTION FOR SUMMARY JUDGMENT</u>

Before the Court at Docket 17 is Plaintiff Maritech Marine Services, LLC's ("Maritech") *Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.* Defendant Bay Welding Services, Inc. ("Bay Weld") responded in opposition at Docket 29, to which Maritech replied at Docket 36. Oral argument was held on January 13, 2022.

## BACKGROUND

This action stems from the alleged defective repair and modification of a 44-foot aluminum catamaran, the M/V Lightning, owned by Maritech, a vessel chartering company based in Anchorage, Alaska. Maritech alleges that Bay Weld, a custom boat manufacturer based in Homer, Alaska, negligently retrofitted the vessel with a defective control system, among other issues, which resulted in the

vessel's allision with a fuel dock in Cordova, Alaska.[1]  Maritech's claimed damages include the net proceeds lost from a cancelled charter arrangement for the Lightning and the cost of hiring other contractors to investigate the control system issues, complete additional work on the vessel, and repair damage from the allision.[2]  Maritech filed the instant motion on September 17, 2021, asserting that it is entitled to summary judgment on its claims for breach of contract, negligence, breach of the implied warranty of workmanlike performance, and violation of Alaska's Unfair Trade Practices Act ("UTPA").[3]  The parties agree that maritime law applies to this case.[4]

The facts, viewed in the light most favorable to Bay Weld for purposes of this summary judgment motion, are as follows.[5]  In the fall of 2018, Brian Edmondson, the sole member of Maritech,[6] approached Eric Engebretsen, the

---

[1] *See generally* Docket 1.

[2] *See* Docket 17 at 20–21.

[3] Docket 17.

[4] *See* Docket 1 at 2, ¶ 4; Docket 11 at 2, ¶ 4.

[5] *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (stating that for summary judgment, "a court must view the evidence 'in the light most favorable to the opposing party'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970))).

[6] Docket 17-1 at 1, ¶ 1 (Edmondson Decl.)

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 2 of 30

owner and operator of Bay Weld,[7] about a remodel and upgrade of the Lightning.[8] Mr. Engebretsen initially turned down the project based on lack of labor capacity but later informed Mr. Edmondson that Bay Weld could complete the project after learning that contractor Mike Stockburger was available to provide assistance.[9] After discussions with Mr. Edmondson regarding the scope of the project, Mr. Engebretsen drafted a cost estimate and explained the details of it to Mr. Edmondson.[10] Following further discussions, Mr. Engebretsen produced an updated Cost/Work Proposal Estimate ("the Estimate").[11] Maritech signed the Estimate in early December 2019, and Bay Weld began work on the Lightning shortly thereafter.[12]

According to Bay Weld, Mr. Engebretsen did not state or imply "that Bay Weld would certify that any component in the Lightning would function for a particular period of time," and the Estimate does not contain such a certification.[13]

---

[7] Docket 30 at 1, ¶ 1 (Engebretsen Aff.).

[8] Docket 29 at 2 (citing Docket 30 at 2, ¶ 4 (Engebretsen Aff.)).

[9] Docket 29 at 2–3 (citing Docket 30 at 2, ¶ 4 (Engebretsen Aff.)).

[10] Docket 29 at 3 (citing Docket 30 at 3, ¶ 5 (Engebretsen Aff.)).

[11] Docket 29 at 3 (citing Docket 30 at 3, ¶ 6 (Engebretsen Aff.); Docket 17-1 at 52–56 (Ex. 8)).

[12] Docket 29 at 4 (citing Docket 30 at 4, ¶ 9 (Engebretsen Aff.)).

[13] Docket 29 at 4 (citing Docket 30 at 4, ¶ 8 (Engebretsen Aff.); Docket 17-1 at 52–56 (Ex. 8)).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 3 of 30

Case 3:20-cv-00231-SLG   Document 53   Filed 03/23/22   Page 3 of 30

Moreover, while Mr. Edmondson and Mr. Engebretsen discussed a rough project completion timeline of spring 2020, they did not agree on a specific completion date, and no such deadline is specified in the Estimate.[14] The Estimate contains eighteen line items, three of which are relevant to the parties' dispute: Items 4, 5, and 10.

Item 4 provides that Bay Weld will "[u]pgrade UltraJet 340's w/ full internal inspection."[15] According to Bay Weld, this provision "arose from Edmondson's request for Bay Weld to 'take a look at' the jets while replacing the impellers."[16] Bay Weld determined that the Lightning's bearings and bearing seals were in "good working condition" by looking for damaged or worn-out components when disassembling and reassembling the bearings, rotating the bearings to listen for noises indicating problems, and listening for noises during sea trials after the work on the Lightning was complete.[17]

Item 5 provides that Bay Weld will "[a]dd Glendinning Joystick controls w/ full electronic controls replacement and electronic steering system."[18] Before the

---

[14] Docket 29 at 4–5 (citing Docket 30 at 4, ¶ 9 (Engebretsen Aff.); Docket 17-1 at 52–56 (Ex. 8)).

[15] Docket 17-1 at 53 (Ex. 8).

[16] Docket 29 at 4 (citing Docket 30 at 4, ¶ 10 (Engebretsen Aff.)).

[17] Docket 29 at 4 (citing Docket 30 at 4–5, ¶ 11 (Engebretsen Aff.)).

[18] Docket 17-1 at 53 (Ex. 8).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 4 of 30

retrofit project, the Lightning had an existing functional Glendinning control system, which Bay Weld removed to install a new, modern system.[19] Bay Weld worked directly with John Glendinning, the system's manufacturer, to determine which existing components of the original system could be integrated into the new system and which needed replacement.[20]

Item 5 also provides that Bay Weld's work will include "complete controls and steering package for two stations and complete hydraulic system w/ dual pumps."[21] Bay Weld states that after discussing the original hydraulic system with Mr. Glendinning, it determined that the "existing pumps functioned well and [were] an acceptable configuration" and thus chose to retain the pumps and integrate them into the new system.[22] According to Bay Weld, "[t]he hydraulic system, including the pumps, functioned well upon delivery of the vessel."[23] Finally, Item 10 provides that Bay Weld will "[t]est and inspect all vessel systems."[24]

---

[19] Docket 29 at 6 (citing Docket 30 at 5–6, ¶ 12 (Engebretsen Aff.)).

[20] Docket 29 at 6 (citing Docket 30 at 5–6, ¶ 12 (Engebretsen Aff.)).

[21] Docket 17-1 at 53 (Ex. 8).

[22] Docket 29 at 6–7 (citing Docket 30 at 6, ¶ 13 (Engebretsen Aff.)).

[23] Docket 29 at 7 (citing Docket 30 at 6, ¶ 13 (Engebretsen Aff.)).

[24] Docket 17-1 at 55 (Ex. 8).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 5 of 30

Bay Weld completed its work on the Lightning in May 2019.[25]  Before delivering the Lightning to Maritech, Bay Weld tested the vessel's systems in the water in Homer for over a week.[26]  Mr. Engebretsen, Mr. Stockburger, and Mr. Glendinning were all present for the launch and initial testing of the Lightning.[27] During the initial testing and calibration of the control system, the system's joystick failed to properly respond to commands.[28]  Mr. Glendinning determined that the failure was due to a control system software issue and resolved the problem by upgrading the software.[29]  Mr. Engebretsen detected a different issue with the control system involving "the bucket position sensors going into a dead zone and the control bucket becoming unresponsive," which he and Mr. Glendinning resolved by "changing software values to eliminate any dead zones in the sensor."[30]  After resolving the two issues, Mr. Engebretsen operated the Lightning

---

[25] Docket 29 at 7 (citing Docket 30 at 6, ¶ 14 (Engebretsen Aff.)).

[26] Docket 29 at 7 (citing Docket 30 at 6–7, ¶ 15 (Engebretsen Aff.)).

[27] Docket 29 at 7 (citing Docket 30 at 6–7, ¶ 15 (Engebretsen Aff.); Docket 31 at 3, ¶ 5 (Stockburger Aff.)).

[28] Docket 29 at 7 (citing Docket 30 at 6–7, ¶ 15 (Engebretsen Aff.); Docket 31 at 3, ¶ 5 (Stockburger Aff.)).

[29] Docket 29 at 7 (citing Docket 30 at 6–7, ¶ 15 (Engebretsen Aff.)).

[30] Docket 29 at 7–8 (citing Docket 30 at 6–7, ¶ 15 (Engebretsen Aff.)).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 6 of 30

several times and tested "all possible maneuvers within its capability" with no further control system or mechanical problems.[31]

After the initial testing of the vessel, Mr. Edmondson joined Mr. Engebretsen on a sea trial of the Lightning during which Mr. Engebretsen demonstrated how to operate the Lightning and had Mr. Edmondson practice operating the vessel.[32] During the sea trial, Mr. Engebretsen explained that the heading line in the Lightning's Garmin navigation system was malfunctioning and advised Mr. Edmondson about options for resolving the issue.[33] Bay Weld maintains that all of the vessel's other systems, including the navigation system's auto-pilot and "dodge" features, were "functioning properly" at this time.[34] After finishing the sea trial in early June 2019, Mr. Edmondson and Mr. Engebretsen agreed that the project was complete and Mr. Edmondson took possession of the Lightning on June 5, 2019; Bay Weld sent its final invoice to Maritech shortly thereafter, and Maritech was paid in full.[35]

---

[31] Docket 29 at 8 (citing Docket 30 at 7, ¶ 16 (Engebretsen Aff.)).

[32] Docket 29 at 8 (citing Docket 30 at 7–8, ¶ 17 (Engebretsen Aff.)).

[33] Docket 29 at 8 (citing Docket 30 at 7–8, ¶ 17 (Engebretsen Aff.)).

[34] Docket 29 at 8–9 (citing Docket 30 at 7–8, ¶¶ 17–18 (Engebretsen Aff.)).

[35] Docket 29 at 8–9 (citing Docket 30 at 8, ¶ 18 (Engebretsen Aff.)); *see also* Docket 17 at 7.

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 7 of 30

Case 3:20-cv-00231-SLG   Document 53   Filed 03/23/22   Page 7 of 30

Twice during the summer of 2019, Mr. Edmonson contacted Mr. Engebretsen via text message about apparent control system issues with the Lightning, and Mr. Engebretsen provided advice about the possible causes of the issues and how to resolve them.[36] Bay Weld maintains that Mr. Edmondson did not follow up regarding either issue or request further assistance from Bay Weld.[37]

Maritech had work done on the Lightning by another business in the fall and winter of 2019, including replacing the starboard reduction gear, water heater, and one of the hydronic heaters.[38] According to Bay Weld, Maritech chose not to employ Bay Weld for this work and did not contact Bay Weld regarding any issues with the starboard jet unit until May 2020.[39] Later, in June of 2020, Maritech removed and reinstalled the Lightning's bucket rams in order to replace the jet bearings and replaced the starboard bucket ram.[40]

---

[36] Docket 29 at 9 (citing Docket 30 at 8, ¶ 19 (Engebretsen Aff.); Docket 17-1 at 88–95 (Exs. 15–16)).

[37] Docket 29 at 9 (citing Docket 30 at 8, ¶ 19 (Engebretsen Aff.)).

[38] Docket 29 at 9 (citing Docket 17-1 at 9 (Edmondson Decl.)).

[39] Docket 29 at 9 (citing Docket 17-1 at 9, 11–12 (Edmondson Decl.); Docket 29-3 (Edmondson Deposition)).

[40] Docket 29 at 11 (citing Docket 17-1 at 12 (Edmondson Decl.); Docket 17-3 at 5 (Ferroni Decl.); Docket 29-3 (Edmondson Deposition)); Docket 31 at 3–4, ¶ 7 (Stockburger Aff.)).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 8 of 30

On June 26, 2020, the Lightning ran into a fuel dock in Cordova, Alaska, while being operated by Mr. Edmondson, causing damage to the vessel.[41]  Shortly after the allision, Mr. Edmondson told Mr. Stockburger that "when the Lightning was approaching the fuel dock, he pulled on the Lightning's control system joystick to slow the vessel and the vessel was pulling in the wrong direction."[42]  On June 29, 2020, Mr. Edmondson emailed Mr. Glendinning and Mr. Engebretsen to inform them about a "product liability issue" with the Lightning's control system, requesting that a Glendinning service technician inspect the control system and provide a report on the cause of the Lightning's allision in Cordova.[43]  Bay Weld offered to inspect and repair the Lightning, but Mr. Edmondson declined the offer because he did not want to run the Lightning to Homer.[44]  Mr. Edmondson instead chose to hire Catalyst Marine and Stillwater Marine to investigate the control system issue and repair the Lightning in Seward.[45]  The Coast Guard also inspected the Lightning after the allision and decided not to put a hold on the vessel returning to

---

[41] Docket 29 at 9 (citing Docket 29-3 (Edmondson Deposition); Docket 17-1 at 15 (Edmondson Decl.)).

[42] Docket 29 at 10 (citing Docket 31 at 3, ¶ 6 (Stockburger Aff.)).

[43] Docket 29 at 10 (citing Docket 30 at 8, ¶ 20 (Engebretsen Aff.); Docket 17-1 at 105–06 (Ex. 20)).

[44] Docket 29 at 10 (citing Docket 30 at 8, ¶ 20 (Engebretsen Aff.); Docket 29-1 (Edmondson Deposition)).

[45] Docket 29 at 10 (citing Docket 17-1 at 15 (Edmondson Decl.)).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 9 of 30

that season.[46]   However, Maritech nonetheless cancelled its upcoming charter contract with Alaska Galore Tours due to concerns about the Lightning's control system.[47]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the movant.[48] If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[49]  In deciding a motion for summary judgment, "a court must view the evidence 'in the light most favorable to the opposing party.'"[50]

---

[46] Docket 29 at 10–11 (citing Docket 29-3 (Ferroni Deposition)).

[47] Docket 29 at 10 (citing Docket 17-1 at 12, 16 (Edmondson Decl.)).

[48] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[49] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[50] *Tolan*, 572 U.S. at 657 (quoting *Adickes*, 398 U.S. at 157); *see also Anderson*, 477 U.S. at 255.

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 10 of 30

**DISCUSSION**

Maritech contends that there are no genuine issues of material fact and that it is entitled to summary judgment on all its claims because "[t]here is overwhelming evidence that Bay Weld breached its contract, negligently installed and failed to install essential vessel control components, and failed to inspect, diagnose, and resolve dangerous defects it owed a duty to cure."[51]  In support of its motion, it has filed email and text communications between the parties, a draft and final Cost/Work Proposal Estimate, and logbook entries detailing work on the vessel and issues with the control system, among other evidence.[52]  Maritech has also submitted declarations from Mr. Edmondson; Laura Edmondson, Mr. Edmondson's spouse; and Enrico Ferroni, the managing member of Stillwater Marine Service, LLC, who performed repair work on the Lightning.[53]

Bay Weld responds that Maritech has failed to meet its initial burden as the movant to establish the absence of genuine issues of material fact because "the testimony and evidence submitted by Maritech demonstrates the existence of

---

[51] Docket 17 at 2–3.

[52] *See* Docket 17-1 (Edmondson Decl.) (detailing exhibits).

[53] *See* Docket 17-1 (Edmondson Decl.); Docket 17-2 at 1, ¶ 1 (Edmondson Decl.); Docket 17-3 at 1, 3, ¶¶ 1, 8 (Ferroni Decl.).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 11 of 30

genuine issues of material fact."[54]   The manufacturer points to factual disputes bearing on contract interpretation, suggests several alternate causes for the Cordova allision, and raises factual issues regarding Maritech's mitigation of damages.[55]   Further, Bay Weld asserts that even if Maritech has met its initial burden, Bay Weld's response in opposition "demonstrates numerous genuine disputes of material fact related to liability and damages that preclude summary judgment."[56]   In support of its opposition, Bay Weld has submitted excerpts of Mr. Edmondson's and Mr. Ferroni's depositions, excerpts of Maritech's discovery responses, and an assessment of the Lightning's condition in August 2021 from Siloh Marine Consultants.[57]   Bay Weld has also submitted affidavits from Mr. Engebretsen and Mr. Stockburger, the owner and operator of Seaside Services, whom Bay Weld employed to assist in the retrofit and renovation of the Lightning.[58]

As detailed below, the Court finds that summary judgment—whether full or partial—is not appropriate at this time.  Even assuming that Maritech met its initial burden on summary judgment, Bay Weld's response in opposition has

---

[54] Docket 29 at 15–16.

[55] Docket 29 at 16–18, 30–32.

[56] Docket 29 at 1–2.

[57] *See* Docket 29-1; Docket 29-2; Docket 29-3; Docket 29-4.

[58] *See* Docket 30 (Engebretsen Aff.); Docket 31 at 2, ¶ 2 (Stockburger Aff.).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 12 of 30

demonstrated that there are numerous genuine disputes of material fact pertaining to liability and damages for each of Maritech's claims.

## I. Affidavits and Declarations

As an initial matter, both parties take issue with the other's affidavits or declarations submitted regarding the instant motion, contending that they constitute improper lay opinion testimony and should be excluded.[59]  The parties each filed motions to strike.  At Docket 49, the Court denied Maritech's motion to strike, finding that Mr. Engebretsen and Mr. Stockburger each have the requisite experience to testify as experts and declining to exclude Mr. Engebretsen's testimony on the basis of a financial conflict of interest.  And at Docket 48, the Court denied in part and granted in part Bay Weld's motion, finding that Mr. Edmondson's and Mr. Ferroni's opinions were permissible lay opinion testimony with the exception of seven statements that either lack foundation or were improperly technical or specialized.[60]  Thus, in ruling on the instant motion, the Court will consider the Engebretsen and Stockburger affidavits in their entirety, as well as the non-stricken portions of the Edmondson and Ferroni declarations.

---

[59] Docket 29 at 15–16; Docket 36 at 3–4; *see also* Docket 32; Docket 35.

[60] Docket 48 (excluding portions of paragraphs 25, 34, and 35 of Mr. Edmondson's declaration and portions of paragraphs 20, 24, 25, and 28 of Mr. Ferroni's declaration).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 13 of 30

## II. Maritech's Claims

### a. Breach of Contract

Maritech firsts asserts that it is entitled to summary judgment on its claim for breach of contract.[61] "Basic principles in the common law of contracts" apply when interpreting maritime contracts.[62] A court should "interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous."[63] "'Contract terms are to be given their ordinary meaning,' and '[w]henever possible, the plain language of the contract should be considered first.'"[64] "Only if the language is ambiguous should a court examine extrinsic evidence and look beyond the written language of the contract."[65] A contract is ambiguous if "reasonable people could find its terms susceptible to more than one interpretation."[66] Summary judgment is generally only appropriate for breach of

---

[61] *See* Docket 17 at 26–29; Docket 36 at 6–11.

[62] *Cleve Co. v. Hecny Transp., Inc.*, 715 F.3d 1189, 1194 (9th Cir. 2013).

[63] *Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007) (quoting *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004)).

[64] *Id.* (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)).

[65] *Tug Blarney, LLC v. Ridge Contracting, Inc.*, 14 F. Supp. 3d 1255, 1263 (D. Alaska 2014) (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986)).

[66] *Klamath Water Users Protective Ass'n*, 204 F.3d at 1210.

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 14 of 30

contract claims when "the contract or the contract provision in question is unambiguous."[67]

Here, the relevant contract is the December 3, 2018 Cost/Work Proposal Estimate.[68] Maritech contends that: (1) the disputed contract terms are unambiguous, precluding consideration of extrinsic evidence such as Bay Weld's affidavits; (2) even if the contract terms are ambiguous, the extrinsic evidence supports Maritech's interpretation; and (3) Bay Weld's breaches of contract caused the Cordova allision and other vessel control issues, which resulted in the damages discussed above.[69] Bay Weld responds that the disputed terms of the Estimate are ambiguous, requiring reference to extrinsic evidence and making Maritech's breach of contract claim inappropriate for resolution on summary judgment.[70]

The parties primarily dispute the meanings of Items 4, 5, and 10 of the Estimate. First, the parties dispute the meaning of "full internal inspection" in Item 4 of the Estimate, which provides that Maritech will "[u]pgrade UltraJet 340's w/ full

---

[67] *Nw. Acceptance Corp. v. Lynwood Equip., Inc.*, 841 F.2d 918, 920 (9th Cir. 1988) (quoting *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983)).

[68] *See* Docket 17-1 at 51–56 (Ex. 8).

[69] *See* Docket 17 at 20–21, 26–29; Docket 36 at 7–11.

[70] Docket 29 at 20–21.

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 15 of 30

internal inspection."[71]  Maritech contends that Bay Weld failed to perform such an inspection because, per the MJP UltraJet 340 HT Service Manual, "a 'full internal inspection' of the jets should have included a thorough diagnostic of the bearings within the jet, as well as a Conditions Found Report."[72]  Bay Weld disagrees, asserting that the plain language of Item 4 does not require the "extensive list of tasks that Maritech suggests it 'should' have" undertaken.[73]  The manufacturer maintains that its actions—"looking for damaged or worn out components during disassembly and reassembly and rotating the bearings to listen for any noise that would indicate the bearings were worn, both before and during sea trials"—constituted a "full internal inspection" based on Mr. Engebretsen's understanding of the contract.[74]

_____

[71] Docket 17-1 at 53 (Ex. 8).

[72] Docket 17 at 27 (citing Docket 17-3 at 4, ¶ 10 (Ferroni Decl.)).

[73] Docket 29 at 20; *see also* Docket 29 at 17–18 ("[W]hen it argues that the 'full internal inspection' provision in Item 4 of the Estimate 'should have' included its laundry list of preferred tasks, it fails to provide any support for that argument besides Ferroni's subjective testimony.  It does not cite any provision of the Estimate that requires those tasks . . . ." (citation omitted)).

[74] Docket 29 at 20 (citing Docket 30 at 4, ¶ 11 (Engebretsen Aff.)); *see also* Docket 30 at 4, ¶ 10 (Engebretsen Aff.) ("I included this provision because during a verbal discussion about the project, Edmondson asked that Bay Weld 'take a look at' the Lightning's jets while replacing the impellers.  I understood this provision to allow Bay Weld the discretion to inspect the jets in the way that it determined would be most effective and efficient.").

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 16 of 30

Item 5 provides that Bay Weld will "[a]dd Glendinning Joystick controls w/ full electronic controls replacement and electronic steering system."[75] Maritech contends that this provision required Bay Weld to replace the Lightning's reverse-thrust bucket sensors and that Bay Weld failed to do so despite bucket sensors being "called for in the original parts list."[76] Bay Weld maintains that "electronic controls" refers only to the control heads, not the bucket sensors, and that it complied with this provision of Item 5 "by removing the existing Glendinning system and installing a new, modern Glendinning system."[77]

Item 5 also provides that Bay Weld's work will include "complete controls and steering package for two stations and complete hydraulic system w/ dual pumps."[78] Maritech asserts that this provision required Bay Weld to replace the Lightning's bucket rams and hydraulic cylinders and that Bay Weld failed to do so.[79] Bay Weld disagrees, maintaining that "no provision of the Estimate required [it] to install an entirely new hydraulic system or to perform unnecessary pressure

---

[75] Docket 17–1 at 53 (Ex. 8).

[76] Docket 17 at 28.

[77] Docket 29 at 20 (citations omitted).

[78] Docket 17-1 at 53 (Ex. 8).

[79] Docket 17 at 13; *see also* Docket 36 at 9 ("Regardless of how one chooses to read the language, Item 5 does not give Bay Weld the unreasonable right to unilaterally decide that the components of the *entire* hydraulic system are satisfactory, replace nothing, inform no one, then accept payment for work it did not do.").

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 17 of 30

or flow tests on the system."[80]  It asserts that it complied with Item 5 by "delivering the Lightning with a complete hydraulic system with dual pumps," which "functioned well upon delivery of the vessel."[81]

Finally, Item 10 provides that Bay Weld will "[t]est and inspect all vessel systems."[82]  Maritech argues that Bay Weld breached this provision with regard to the hydraulic system because it "did not perform a pressure test or a flow test, nor did [it] perform an internal inspection of the impellers and wear plates," and with regard to the jet units because it "did not perform the inspection with any tools, such as a stethoscope or feeler gauges" and did not perform further testing of the jet bearings "under operating load."[83]  Bay Weld responds that the Estimate did not require it to inspect the jet units in the manner suggested by Maritech and did not require it to "perform unnecessary pressure or flow tests."[84]

The Court finds that the disputed provisions of the Estimate are all ambiguous to some extent because they are susceptible to multiple interpretations. The contract terms are sparse, and it is not clear from their plain language what

---

[80] Docket 29 at 20–21 (citations omitted).

[81] Docket 29 at 20 (citing Docket 30 at 6–7, ¶ 15 (Engebretsen Aff.)).

[82] Docket 17-1 at 55 (Ex. 8).

[83] Docket 17 at 27–29.

[84] *See* Docket 29 at 20–21.

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 18 of 30

precisely a "full" inspection entails, whether "electronic controls" include bucket sensors, whether Item 5 allowed Bay Weld to retain the preexisting components of the Lightning's hydraulic system, or what tasks are necessary to "test and inspect" all vessel systems. Thus, interpretation of the contract requires reference to extrinsic evidence.

The extrinsic evidence is such that a reasonable factfinder could find either party's contract interpretation correct. In particular, the parties' divergent interpretations of the contract appear to stem in large part from different assumptions about what is customary in the vessel repair and retrofit industry. Maritech, as Bay Weld notes, primarily takes issue with Bay Weld's decision to integrate existing components into the Lightning's systems and its failure to perform all the tests and inspections that Maritech regards as standard.[85] Bay Weld, by contrast, asserts that "it is a common practice in the vessel repair industry to retain functioning components of an existing system when installing a new system" because doing so "increases efficiency and lowers costs for the vessel's owner."[86] The manufacturer maintains that "Engebretsen used the word 'Estimate' intentionally, to reflect the fact that vessel retrofit projects of this nature are fluid

---

[85] *See* Docket 17 at 27–29.

[86] Docket 29 at 21 (citing Docket 30 at 5, ¶ 12 (Engebretsen Aff.); Docket 31 at 2, ¶ 4 (Stockburger Aff.)).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 19 of 30

Case 3:20-cv-00231-SLG   Document 53   Filed 03/23/22   Page 19 of 30

and evolve as the work is completed."[87]  Interpretation of the Estimate will thus turn on the parties' intent and the applicable industry customs, which are both questions to be determined by the factfinder.[88]  Viewing the evidence in the light most favorable to Bay Weld, there exist multiple genuine disputes of material fact regarding the proper interpretation of the Estimate, precluding summary judgment on this claim.

Even assuming *arguendo* that Maritech's interpretation of the disputed provisions is the only correct interpretation and that Bay Weld did not comply with those provisions, there are disputed facts bearing on the remaining elements of Maritech's breach-of-contract claim.  First, the facts are clearly disputed as to the cause of the Lightning's allision in Cordova and other problems with the vessel.[89]

---

[87] Docket 29 at 3–4 (citing Docket 30 at 3–4, ¶¶ 6–7 (Engebretsen Aff.); Docket 31 at 2, ¶ 4 (Stockburger Aff.)) ("It is a common practice in the vessel repair and retrofit industry for a repair proposal to describe the various aspects of the work in broad terms, describing the primary concept of the systems to be installed, while allowing the shipyard the discretion to complete the tasks in the most effective and efficient way.").

[88] *See Nat'l Union Fire Ins. Co.*, 701 F.2d at 97 ("[A]mbiguity in a contract raises a question of intent, which is a question of fact precluding summary judgment."); *Konica Bus. Machs. v. Vessel Sea-Land Consumer*, 47 F.3d 314, 315 (9th Cir. 1995) (holding that genuine issue of material fact regarding "port custom or general usage of the trade" precluded summary judgment; *see also, e.g.*, *S.E.C. v. Dain Rauscher, Inc.*, 254 F.3d 852, 859 (9th Cir. 2001) (holding summary judgment was inappropriate when there was genuine issue of material fact as to appropriate industry standard for underwriting municipal offerings); *May v. Morganelli-Heumann & Assocs.*, 618 F.2d 1363, 1366 (9th Cir. 1980) (holding summary judgment was inappropriate when there existed a genuine dispute of material fact as to the "relevant custom and usage of the architectural profession").

[89] *See Poincon v. Offshore Marine Contractors, Inc.*, 9 F.4th 289, 297 (5th Cir. 2021) ("'Questions of causation in admiralty are questions of fact,' and they are best left to the

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 20 of 30

Case 3:20-cv-00231-SLG   Document 53   Filed 03/23/22   Page 20 of 30

Maritech theorizes that the Cordova allision was caused by Bay Weld's improper crimping of Deutsch connectors in the control system.[90]  However, the Court agrees with Bay Weld that Maritech "merely argues that the evidence supports its theory [regarding the alleged control system failures], not that the evidence conclusively establishes its theory to the exclusion of others"—as required by the summary judgment standard.[91] Over a year passed between Bay Weld's delivery of the Lightning to Maritech and the Cordova allision—during which time Maritech operated the Lightning and had other companies work on the vessel, including replacing or rebuilding both bucket rams.[92]  Bay Weld has presented evidence that there could have been alternate causes for the allision and broader control system issues, including Maritech's "failure to properly install or calibrate the bucket rams after [it] had them replaced or rebuilt";[93] "a failure of the Glendinning software that

---

factfinder . . . when there is a genuine dispute." (quoting *Stolt Achievement, Ltd. v. Dredge B.E. Lindholm*, 447 F.3d 360, 367 (5th Cir. 2006))).

[90] *See* Docket 17 at 18–20.

[91] Docket 29 at 17.

[92] *See* Docket 17 at 11–14; Docket 17-1 at 9–12, ¶¶ 18–23 (Edmondson Decl.); Docket 17-3 at 5, ¶ 12 (Ferroni Decl.); *see also* Docket 29 at 9 ("Maritech had significant work done on the Lightning by another business in the fall and winter of 2019, including replacing the starboard reduction gear, replacing the water heater, and replacing one of the hydronic heaters.").

[93] *See* Docket 29 at 11 (citing Docket 31 at 3–4, ¶ 7 (Stockburger Aff.)).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 21 of 30

operates the system, an issue that led to multiple prior control system failures";[94] or "user error by Edmondson and/or Ferroni in operating the system."[95] The manufacturer also maintains, based on Engebretsen and Stockburger's affidavits, that improper field crimping of Deutsch connectors is unlikely to result in control system failure like the one experienced by the Lightning.[96] Viewing the evidence in the light most favorable to it, Bay Weld has demonstrated multiple issues of disputed fact that preclude summary judgment for Maritech.

Further, there remain genuine disputes of material fact regarding whether Maritech adequately mitigated its claimed damages.[97] "[A] nonbreaching party to a contract has a duty to take reasonable steps to mitigate its damages, and its failure to do so may prevent it from recovering damages that otherwise could have

---

[94] Docket 29 at 23.

[95] Docket 29 at 23; *see also* Docket 29 at 11 (citing Docket 30 at 9, ¶ 22 (Engebretsen Aff.); Docket 31 at 4, ¶ 8 (Stockburger Aff.)).

[96] Docket 29 at 12 (citing Docket 30 at 9, ¶ 24 (Engebretsen Aff.); Docket 31 at 4, ¶ 9 (Stockburger Aff.)).

[97] Maritech appears to assert that Bay Weld must "carry its burden" regarding mitigation to establish a genuine issue of material fact, stating that "[d]espite the general inferences afforded the non-moving party when ruling on a motion for summary judgment, Bay Weld still has the burden of proof to show that Maritech 'failed to take reasonable measures to mitigate damages or avoid consequences.'" Docket 36 at 15–17 (quoting *State v. Rock*, 380 P.3d 1084, 1087 (Or. Ct. App. 2016)). This is incorrect; while Bay Weld would have the burden of establishing failure to mitigate at trial, the manufacturer, as the non-moving party, need not meet this burden to establish a genuine issue of material fact for purposes of summary judgment.

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 22 of 30

been avoided."[98]  The parties disagree regarding: (1) whether Maritech could have safely used the Lightning to fulfill its summer 2020 contract with Alaska Galore Tours in light of the fact that the Coast Guard did not put a hold on the vessel after the allision;[99] (2) whether Maritech acted reasonably in its attempts to contact Bay Weld to report various issues with the Lightning's control system and its eventual decision to have the vessel repaired in Seward by another company rather than in Homer by Bay Weld;[100] and (3) whether Maritech could have mitigated its damages by using another one of its vessels as a replacement for the Lightning for the Alaska Galore Tours contract.[101]  These disputes all involve questions of reasonableness, which are determinations for the trier of fact.  Thus, summary judgment is also inappropriate for Maritech's breach-of-contract claim due to genuine issues of material fact regarding Maritech's damages.

### b. Negligence

---

[98] *Yang Ming Marine Transp. Corp. v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1095 (9th Cir. 2001).

[99] *Compare* Docket 29 at 31 (citing Docket 29-3 (Ferroni Deposition)), *with* Docket 36 at 17 (discussing the "danger and uncertainty associated with taking the Vessel back out on the water to service clients").

[100] *Compare* Docket 29 at 30, *with* Docket 36 at 16 ("The Vessel lacked the endurance to travel to Homer—given the unresolved concern over further control failures—it was best to reduce the need to dock as much as possible.").

[101] *Compare* Docket 29 at 31–32, *with* Docket 36 at 17.

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 23 of 30

Second, Maritech contends that it is entitled to summary judgment on its negligence claim.[102] Under maritime law, negligence claims are "determined under general principles of maritime negligence rather than common law negligence."[103] "However, the elements for a maritime negligence cause of action are defined similarly to the common law: a duty, a breach of the duty, proximate cause, and damages."[104]

Maritech contends that Bay Weld breached its duty of care by (1) "fail[ing] to properly install the Glendinning control system, resulting in a dangerous condition in which the Vessel controls were intermittently inoperable and altogether unpredictable"; (2) "neglect[ing] to warn Maritech of its failure to install a properly functioning heading line on the Vessel which thus crated a dangerous condition under which to operate"; and (3) failing to disclose other defects in its work, which caused "increased dangers" including "the faulty navigation system, the Vessel steering only being powered by one engine, the intermittent control failures, the worn and leaking bearings, and the outdated bucket sensors."[105]   Bay Weld

---

[102] Docket 17 at 29–33; Docket 36 at 11–12.

[103] *White v. Sabatino*, 526 F. Supp. 2d 1143, 1156 (D. Haw. 2007) (quoting *Prince v. Thomas*, 25 F. Supp. 2d 1045, 1047 (N.D. Cal. 1997)).

[104] *Id.* at 1156–57 (D. Haw. 2007) (quoting *Prince*, 25 F. Supp. 2d at 1047).

[105] Docket 17 at 31–33.

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 24 of 30

disputes Maritech's characterization of the facts, contending that it properly installed the control system and that the system "functioned well upon delivery" in June 2019.[106] Bay Weld also maintains that Engebretsen warned Edmondson that the heading line was not functioning properly during the sea trial of the Lightning, asserting that "Engebretsen and Edmondson discussed this issue . . . prior to Bay Weld's delivery of the Lightning and Engebretsen advised Edmondson about possible next steps in resolving that issue."[107]

In addition to the parties' dispute regarding whether Bay Weld warned Maritech of the heading line issue, there are multiple issues of fact—as discussed in the section above—relating to the scope of the contract, which may bear on Bay Weld's duty of care. Further, the aforementioned factual disputes regarding causation are relevant to Maritech's negligence claim as well. Though Maritech asserts that Bay Weld's allegedly negligent installation of the Glendinning control system "was more likely than not the cause of the Vessel's intermittent control failures, resulting in the allision,"[108] that is not the proper standard for summary judgment. Here, there are multiple potential alternate causes of the control failures, and the parties dispute whether improper crimping can cause such a

---

[106] Docket 29 at 23.

[107] Docket 29 at 8 (citing Docket 30 at 7–8, ¶ 17 (Engebretsen Aff.)).

[108] Docket 17 at 31.

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 25 of 30

failure. Finally, there remain genuine issues of fact regarding Maritech's mitigation of damages, as discussed above. Thus, viewing the evidence in the light most favorable to Bay Weld, there exist multiple genuine disputes of fact bearing on Maritech's negligence claim, making summary judgment on that claim inappropriate.

### c. Breach of Implied Warranty of Workmanlike Performance

Third, Maritech asserts that it is entitled to summary judgment on its claim for breach of the implied warranty of workmanlike performance.[109] Maritime contracts "involving the rendering of services include[] the implied promise to perform those services with reasonable care, skill and safety."[110] This implied warranty "is a ground for liability where a contractor chooses equipment for a specific purpose that is defective or unsafe."[111] To succeed on a claim for breach of the implied warranty of workmanlike performance, a plaintiff must show it suffered damages as a result of the contractor's failure to use "the degree of diligence, attention, and skill adequate to complete the task."[112]

---

[109] Docket 17 at 33–36; Docket 36 at 12–13.

[110] *Tidewater Barge Lines, Inc.*, Case No. 03-CV-1225-ST, 2005 WL 8177086, at *5 (D. Or. Nov. 30, 2005); *see also H & H Ship Serv. Co. v. Weyerhaeuser Line*, 382 F.2d 711, 712 (9th Cir. 1967).

[111] *Prowler, LLC v. York Int'l Corp.*, Case No. C06-660JLR, 2007 WL 2363046, at *5 (W.D. Wash. Aug. 14, 2007).

[112] *Id.*

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 26 of 30

Maritech contends that Bay Weld breached the implied warranty of workmanlike performance by improperly installing the vessel control system and navigation system.[113] Bay Weld responds that it did its work with "the degree of diligence, attention, and skill adequate to complete the task."[114] Regarding the control system, Bay Weld again maintains that it "properly installed and thoroughly tested the control system prior to delivery," that "the system functioned well upon delivery," and that "the evidence does not support Maritech's theory that Bay Weld's field crimping of the Glendinning system's cables caused the alleged control system failure in Cordova."[115] Further, Bay Weld contends that the navigation system's autopilot and "dodge" features "functioned properly upon delivery" and that Mr. Edmondson knowingly accepted delivery of the Lightning after Mr. Engebretsen informed him that the heading line was not functioning correctly.[116]

---

[113] *See* Docket 17 at 34–35.

[114] Docket 29 at 26.

[115] Docket 29 at 26 (citing Docket 30 at 6–8, ¶¶ 15–16, 18 (Engebretsen Aff.)); Docket 31 at 3, ¶ 5 (Stockburger Aff.)).

[116] Docket 29 at 27 (citing Docket 30 at 7–8, ¶¶ 17–18 (Engebretsen Aff.)).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 27 of 30

There are disputed facts as to whether Bay Weld's work was substandard,[117] and even assuming Bay Weld's work *was* substandard, the disputed facts regarding causation discussed above also preclude summary judgment on liability for this claim. Moreover, the aforementioned issues of fact concerning Maritech's mitigation of damages also make summary judgment on this claim inappropriate.[118]

### d. UTPA Claim

Fourth and finally, Maritech asserts that it is entitled to summary judgment on its Unfair Trade Practices Act ("UTPA") Claim.[119] The UTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce."[120] The Act defines unfair trade practices to include "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."[121] Maritech

---

[117] *Compare* Docket 17 at 19 (citing Docket 17-3 at 11–13, ¶ 27–31 (Ferroni Decl.)), *with* Docket 29 at 26 (citing Docket 30 at 6–7, ¶¶ 15–16 (Engebretsen Aff.); Docket 31 at 3, ¶ 5 (Stockburger Aff.)).

[118] The parties also dispute whether the *East River* doctrine applies to preclude Maritech from recovering economic damages for its negligence or warranty claims, but the Court need not resolve that issue at this juncture. *See* Docket 29 at 32; Docket 36 at 18–21; *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986).

[119] Docket 17 at 36–39; Docket 36 at 13–14.

[120] AS § 45.50.471(a).

[121] AS § 45.50.471(b)(6); Docket 17 at 36.

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 28 of 30

contends that Bay Weld violated the UTPA in this manner because it "knowingly includ[ed] language in the agreement that conveyed to Maritech services and Vessel components in a quality and grade that Bay Weld did not intend to fulfill," including "indicat[ing] that all components of various features would be replaced" when in reality Bay Weld re-used some old components.[122]

Bay Weld responds that the disputed provisions of the Estimate did not "require replacement of all components of every system, regardless of their condition or functionality."[123] The manufacturer contends that "Maritech's subjective expectation [regarding the Estimate] is patently unreasonable, economically unfeasible, and [] unsupported by the Estimate itself."[124] It notes that "Maritech relies solely on the language in the Estimate to support its claim under 45.50.471(b)(6), but ignores the extensive discussions between Edmondson and Engebretsen about the scope of the project," asserting that, "[b]ased on those discussions, [as] well as the Estimate itself, Edmondson knew or should have known that Bay Weld agreed to install and integrate new systems in the Lightning rather than replace every component of those systems."[125]

---

[122] Docket 17 at 37 (citing AS § 45.50.471(b)(6)).

[123] Docket 29 at 29.

[124] Docket 29 at 29.

[125] Docket 29 at 29 (citing Docket 30 at 3, ¶¶ 5–6 (Engebretsen Aff.)).

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 29 of 30

As discussed above, there exist multiple disputed facts regarding the customary practices in the vessel repair and retrofit industry, which bear on whether Bay Weld's communications with Maritech, including the Estimate, constituted misrepresentations. The Court therefore finds that summary judgment is not appropriate on Maritech's UTPA claim.

## CONCLUSION

Viewing the evidence in the light most favorable to Bay Weld, there exist multiple genuine issues of fact regarding liability and damages for Maritech's claims, precluding summary judgment. Maritech's *Motion for Summary Judgment* at Docket 17 is DENIED.

DATED this 23rd day of March, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:20-cv-00231-SLG, *Maritech Marine Services, LLC v. Bay Welding Services, Inc.*
Order re Motion for Summary Judgment
Page 30 of 30

Case 3:20-cv-00231-SLG   Document 53   Filed 03/23/22   Page 30 of 30